CANNELLA, Judge.
Plaintiff, Willella Turner Smith, appeals from a judgment dismissing her action to recover damages for her deceased husband, McGee Smith (Smith), resulting from his contracting silicosis. The case was dismissed against all defendants based on a peremptory exception of prescription.[1] We reverse, holding that the action is not prescribed.
Smith was employed by various companies as a sandblaster from 1961 through July 24, 1980. In the course of his employment he was exposed to silica dust. On June 13, 1979, Smith had chest x-rays taken at the direction of his then-current employer. The tests showed an undefined, abnormal condition warranting further pulmonary testing. After two days of testing, Smith returned to work. No one told him the results, that he had a serious medical condition involving his lungs, or that any problems he might be having were work-related. Smith was only told by someone at work that he had a “spot on his lung”. No additional information was given to him and he continued working.
In early 1980 Smith began experiencing breathing difficulties and fatigue when climbing ladders. He visited a local clinic on July 19, 1980 because of his continued discomfort. The treating physician, Dr. Villemarette (no first name appears in the record), told him in reference to his lungs that “they got scratched by the sand”. He was referred to Dr. Morton Brown, a pulmonary disease specialist, who saw Smith later that month. In a report dated August 1,1980, Dr. Brown diagnosed him with silicosis. Smith was terminated from his employment on July 24,1980.
° On July 27, 1981, Smith filed suit against various defendants in federal district court for damages resulting from silicosis. Subsequently, the federal suit was voluntarily dismissed without prejudice. On July 5, 1984 Smith filed this action in the 24th Judicial District Court against various defendants, including manufacturers of respiratory equipment, suppliers, employers, executive officers and various insurers. Peremptory exceptions of prescription were filed by several defendants, Clemco Industries Corporation, E.D. Bullard Company, Pacific Employers Insurance Company, Employer Liability Assurance Corporation, Employers Commercial Union Insurance Company, Great Southwest Fire Insurance Company and Rex Painting, Inc. The exceptions were heard on June 18 and 25,1993. On July 1,1993, the trial judge granted the exceptions filed by Clemco and Bullard and dismissed the suit against all defendants, with prejudice.
On appeal, plaintiff asserts that the trial judge erred in granting the exception of prescription. She asserts that defendants failed to show that Smith had a reasonable basis upon which to file his suit prior to the actual diagnosis of silicosis on August 1, 1980. Second, plaintiff asserts that defendants failed to *1253 show that the tortious acts had abated prior to July 27, 1980.
Clemeo, Bullard and Pacific filed response briefs to plaintiffs appeal. They contend that the medical reports and depositions of Smith show that he had either constructive or actual knowledge that he had contracted a work-related lung disease.
In Cole v. Celotex, 620 So.2d 1154 (La.1993), the Louisiana Supreme Court analyzed the prescription issue in the context of an asbestosis case. The court noted that under La.C.C. art. 3492, the liberative prescription of one year for delictual actions commences to run from the day injury or damage is sustained. 620 So.2d at 1156. Damage is considered to be sustained when it has manifested itself with sufficient certainty to support the accrual of a cause of action. Id. at 1156. When the cause of action is not known, or reasonably knowable by the plaintiff, the doctrine of contra non valentem agere nulla currit praescriptio prevents the running of liberative prescription. Id. at 1156. The precise point at which a plaintiff becomes aware of sufficient facts to begin the commencement of the prescriptive period is often difficult to identify. Id. at 1156-1157. Citing Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987), the court in Cole stated that, “[the] question is whether, in light of plaintiffs own information and the diagnoses he received, the plaintiff was reasonable to delay in filing suit.” Id. at 1157.
In Cole, the court found that the plaintiff was never diagnosed with asbestosis by any physician in the time period that defendant asserted he knew or had constructive knowledge that he had the disease. Here, defendants assert that Smith had constructive or actual knowledge in 1979 when he was put into the hospital for pulmonary tests and was told he had a “spot” on his lung, in early 1980 when he began to suffer incidences of breathing difficulty and fatigue, or, at the latest, on July 19, 1980 when Dr. Villemarette examined him and referred him to Dr. Brown. The allegations are based on Smith’s deposition in which he testified that he did not ask his employer why he was being sent to the hospital in 1979 or what the results were after he returned to work. In addition, defendants refer to Smith’s deposition taken on April 6, 1983 in which the following colloquy occurred after general questioning as to why he went to the clinic on July 19, 1980:
“A. Well, I had went to the other doctor for just a regular checkup. I usually do that. That’s something — a habit I have, because I was particular about my health, and went to the doctor. I don’t know the doctor now. I think my representor got his name. And I told him to give me a general checkup and everything, so he gave me a general checkup, and he asked me when he come to examine me, he asked me what them scars was on my chest, and I asked him, ‘What scars?’ you know, and he told me, he said, how did they get there. He asked me what type of work I did, and I told him, and he told me that they got scratched by the sand.
Q. He told you you had silicosis?
A. Yeah, and that’s when he told me, he recommended me to Dr. Brown, you know, a specialist in that field.”
In response, plaintiff asserts that the evidence shows that Smith was not aware that he had a work-related disease which may have been caused by the acts of defendants. She points out that Dr. Neal Gorman, the vocational rehabilitation professional that evaluated Smith, stated that Smith had a tenth grade education, that he frequently used malapropisms and that he tended to speak tangentially, requiring the questioner to actively focus Smith’s attention on the questions being asked. Plaintiff argues that these factors must be taken into consideration when determining whether Smith had the ability to comprehend that the description of a “spot on the lung” or that the lung was “scratched by the sand” really meant that he had silicosis, a serious work-related lung disease which would put him on notice to assert his demand for damages.
The record was designated in this case. Attached to the exceptions of prescription are the documents relating to the proceedings in federal court, the depositions of Smith taken on June 1, 1982 and April 6, 1983, Dr. Gorman’s report dated August 7, 1981, the *1254 West Jefferson Hospital pulmonary function studies done on June 18, 1979, the October 23,1980 report of Dr. Robert Jones, a pulmonary specialist and Tulane University Professor of Medicine, following his October 21, 1980 examination of Smith, the April 20,1981 report of Dr. C.J. Houser, a pulmonary disease specialist, following his examination of Smith at the request of the U.S. Department of Labor, the July 28, 1980 medical bill from the clinic for Smith’s July 19, 1980 visit, Dr. Villemarette’s July 19, 1980 handwritten notes and the July 19, 1980 pulmonary function studies from the clinic.
In reviewing these documents, we find that only the depositions and Dr. Villemarette’s notes are pertinent to the issue of the actual or constructive knowledge of Smith of his diagnosis of silicosis. The medical studies are in the form of diagrams and written in medical language. The reports of Drs. Gor-man, Jones and Houser were based on evaluations made subsequent to the August 1, 1980 diagnosis and simply relate information that Smith knew at the time he was evaluated or examined by these doctors. The three reports do not prove that Smith knew or should have been on notice that he had a work-related disease prior to August 1, 1980.
Dr. Villemarette’s handwritten notes from the visit of July 19, 1980 are unreadable. However, the typed notes, below the handwritten entry, describe the lungs as follows:
“Both hilar are elevated, indicating some contraction of both upper lobes and minimal fibrotic opacity is present within both upper lung fields, apparently representing healed granulomatous residuals. No recent pulmonary infiltrations are noted. Remaining lung field shows signs of emphysema. Both angles appear clear. Cardiac shadow does not appear unusual for this type of chest.”
Dr. Villemarette’s report of July 19, 1980 makes no reference to silicosis. It describes the lungs in medical language and only refers to the possibility of emphysema. Thus, based on these notes, Smith would not necessarily have been put on notice that he had silicosis.
After reviewing all of the evidence in this ease, including Smith’s educational level, his communication level and the lack of communication by his employer when it was in the position of conveying the information to him, we find that Smith was not unreasonable in filing suit on July 27,1981. Silicosis is one of many pulmonary diseases and the onset of Smith’s symptoms were gradual. Furthermore, we do not interpret the answer made by Smith in his April 6, 1983 deposition to prove that he was told by Dr. Villemarette that he had silicosis. We interpret the answer to mean that silicosis is the name of the disease with which Smith was diagnosed after examination by Drs. Brown, Jones and Houser. Notably, the latter two doctors were asked to confirm the diagnosis by Dr. Brown. Thus, we find that the earliest date that Smith had knowledge of his work-related disease was the date on which he was seen and diagnosed by Dr. Brown, namely on August 1, 1980.
Accordingly, the judgment of the trial judge granting the peremptory exception of prescription is hereby reversed. The case is remanded for further proceedings.
Costs of this appeal are to be equally shared and paid for by defendants.

REVERSED AND REMANDED.

. McGee Smith, the injured party, instituted suit. He died from silicosis on May 9, 1990. His wife was substituted as plaintiff for her husband, but the caption was never formally changed in the trial court.